OPINION OF THE COURT
Thomas Marcelle, J.
Tim and Kim Carlo (Carlos) brought a small claims proceeding against their former tenants Betty Koch-Matthews and Diana Matthews (Matthews). At trial the evidence established that the Carlos had rented the Matthews an apartment in the City of Cohoes. The parties had no written lease but had a month-to-month arrangement. Each month, the Matthews would tender the rent which was accepted by the Carlos. This arrangement continued for about seven years until the end of April 2016.
On April 30, 2016, via text message, the Matthews informed the Carlos that they would be moving out by May 1 (exhibit 1). The Matthews explained that “the only reason that the notice was short was because [their] closing date for the new house was moved quite a few times and [they] were never sure when it was going to be” (id.). The Carlos responded that “New York State” required that tenants who rented month-to-month provide the landlord with a month’s notice before vacating the premise. Consequently, absent the notice, the Carlos demanded that the Matthews pay May’s rent. The Matthews took a contrary position; they maintained that since the parties “had no agreement . . . [they] were free to move out at any time” and, thus, they would not be remitting May’s rent (id.).
*468 At trial, the Carlos based their claim upon Real Property Law § 232-b which provides in relevant part:
“A monthly tenancy or tenancy from month to month of any lands or buildings located outside of the city of New York may be terminated by the landlord or the tenant upon his notifying the other at least one month before the expiration of the term of his election to terminate.”
The question before the court is whether Real Property Law § 232-b imposes upon a tenant a mandatory requirement to give a month’s notice to the landlord before terminating a month-to-month lease. The key statutory phrase is “may be terminated.” A literal interpretation of the phrase would mean that Real Property Law § 232-b is permissive; that is, a tenant “may” choose to terminate a lease by providing a month’s notice. Under this permissive reading, Real Property Law § 232-b would be a safe harbor for a tenant — meaning that compliance with the statute would afford a tenant complete comfort and security that the lease is terminated.
The alternative statutory interpretation would be that Real Property Law § 232-b is a mandate. That is, a tenant may terminate the lease only if he provides a month’s notice to the landlord. To interpret Real Property Law § 232-b to be mandatory in nature, the court would have to construct the statute to read either:
“A monthly tenancy . . . [shall] [may] be terminated by . . . the tenant upon his notifying the other at least one month before the expiration of the term of his election to terminate [or]
“A monthly tenancy . . . may be terminated by . . . the tenant [only] upon his notifying the other at least one month before the expiration of the term of his election to terminate” (emphasis added).
Statutory interpretation begins with the statute’s language (Yatauro v Mangano, 17 NY3d 420, 426 [2011]). Here, the statute employs the word “may” as opposed to “shall.” This language choice signifies that the legislature intended Real Property Law § 232-b’s edict to be permissive and not mandatory.[1] Moreover, for the statute to be mandatory, the court would need to supply language that the legislature chose not to *469 insert. In particular, neither the word “shall” nor “only” appears in Real Property Law § 232-b. What the legislature did not place in the statute, the court will not add — power to construe is not power to amend (see Sexauer & Lemke v Burke & Sons Co., 228 NY 341 [1920]).
Construing Real Property Law § 232-b to be permissive is not without issues. It could be argued that a permissive interpretation renders the statute without functional purpose. The argument, in essence, goes that if a landlord is without a remedy when the tenant violates Real Property Law § 232-b, then the statute is impotent. No court should assume that the legislature exercised its power in a futile or meaningless manner. Indeed to do so would be disrespectful to the legislature and not in accordance with fundamental statutory interpretation principles (Matter of Christopher F., 260 AD2d 97, 100 [3d Dept 1999]; McKinney’s Cons Laws of NY, Book 1, Statutes § 144).
However, in drafting Real Property Law § 232-b, the legislature acted against a backdrop of the common law which distinguished between a monthly tenancy and a month-to-month tenancy. Though this distinction is discussed at length later in the opinion, suffice to say for now, the distinction caused much confusion and left the manner of ending a month-to-month arrangement annoyingly obtuse. By enacting Real Property Law § 232-b, the legislature provided clarity to a murky area of law. In particular, the legislature made the same rule for terminating a monthly tenancy as a month-to-month tenancy. Thus, Real Property Law § 232-b altered the common law, which is no small thing.
Further, the statute circumscribes a landlord’s ability to require notice longer than a month. When the legislature constricts the ability to contract, it has exercised power. Far better to find a purpose as the statute is written than to recompose the law by a court sprinkling a word here and there to create rights and burdens that a literal interpretation would not have permitted (see e.g. Standard Oil Co. of New Jersey v United States, 221 US 1, 99 [1911] [Harlan, J., concurring in part and dissenting in part]).[2]
*470 Normally, the preceding statutory analysis would have completed the case, since it was the only ground advanced by the plaintiffs for relief. If this case had been litigated by counsel, the court would go no further. A court’s role is not to hypothesize (and then decide) alternative legal theories not raised by counsel; rather, it is to decide the issues actually argued.
However, this case arises under the small claims statute where the legislature has instructed the courts to do substantial justice (UCCA 1804). The small claims act allows people to enjoy the benefits of litigation in cases where economics would not justify retention of counsel and the accompanying elaborate and expensive pleading and motion practice. This case is a perfect example. The dispute is over $650 which means (under current market rates) that if a lawyer exceeded two or three hours on the case, the cost of counsel would consume the entire potential judgment.
In this case, substantial justice means, at a minimum, that the court should explore all appropriate legal theories that could potentially afford plaintiffs relief despite only relying upon Real Property Law § 232-b. Plaintiffs’ theory is clear — the law, whether found in a statute or in common-law rulings, entitles them to a month’s notice before the tenants quit the lease. Therefore, the court will consider common-law rights.
New York common law differentiates between a monthly tenancy and a month-to-month tenancy. Although sounding similar, a monthly tenancy and a month-to-month are different terms with quite different meaning. A monthly tenancy has a fixed term and the tenancy ends even in the absence of notice; a month-to-month tenancy has an indefinite term and continues until terminated by notice (Adams v City of Cohoes, 127 NY 175, 183-184 [1891]).
On the difference between the two terms, “New York cases are in some confusion” (Recent Case, Landlord and Tenant—Monthly Tenancy—Notice Necessary to Terminate, 26 Harv L Rev 180, 180-181 [1912]). Indeed it has been noted that in many cases the “distinction in terms was not recognized . . . *471 accounting] for some of the apparent disagreement in the opinions” (Earl Holding Corp. v Glicker, 100 NYS2d 658, 661 [Mun Ct, Bronx County 1950] [citations and internal quotation marks omitted]). Rather than engaging in an extensive expository adventure to review the confusion and inconsistency in applying terms in common-law cases, the court will simply restate the operative definitions of monthly tenancy and a month-to-month tenancy.
A monthly tenancy is really an implied contract. A monthly tenancy normally follows the expiration of a lease (a contract) between the parties. Under common-law principles, once a lease expired, the landlord could eject or evict the tenant without notice; and concomitantly, the tenant could leave the property without notice to the landlord (Kennedy v City of New York, 196 NY 19, 25 [1909]). This should be no surprise, after all the parties had expressly agreed to the ending date in the contract and, thus, no further notice was needed.
However, despite the fact that the lease had expired and that relationship had ended, if the tenant offered another month’s rent and the landlord accepted the rent, this offer and acceptance created a new contract. This new contract endured no more than the offer and acceptance permitted — one month. Thus, the new contract by implication expired at the end of the month at which time the tenant had the right to pack up and leave without notice and the landlord could evict the tenant without notice. Although the cycle of monthly payments may continue indefinitely, each acceptance and offer constitutes a renewed contract for one month. Such an arrangement was considered a monthly tenancy. Thus, the foundational common-law cases note that a monthly tenancy is for a fixed term and can be ended without notice (see generally Adams, 127 NY at 183; Ludington v Garlock, 9 NYS 24, 27 [1890]).
In contrast, a month-to-month tenancy is founded in property rights rather than contract rights. Although the parties have agreed upon the amount of rent, they have failed to mutually assent to an ending date for the lease. Moreover, since a month-to-month tenancy is created where no valid prior agreement or lease for a definite term existed, no termination date can be implied from a prior contract.
Precisely because there is no agreement as to the tenancy termination date, each month either the landlord or the tenant has a right to continue their interest in the property and in the rental income respectively. The month-to-month tenancy may *472 and can continue indefinitely. The English common-law cases required that the estate interests could only be ended upon reasonable notice to the other party (.Landlord and Tenant—Monthly Tenancy—Notice Necessary to Terminate, 26 Harv L Rev at 180-181). To protect each party’s property interest, New York adopted a rule of proportion: “[w]here the tenancy is from week to week, or month to month a week’s or month’s notice to quit must be given” (Anderson v Prindle, 23 Wend 616, 619 [1840]; see also Klingenstein v Goldwasser, 27 Misc 536, 537 [App Term 1899] [holding that where tenancy is for an indefinite term, one month’s notice to quit to terminate the lease]).
At this juncture, the case circles back to the question of whether the arrangement between the Carlos and the Matthews was a monthly tenancy or a month-to-month tenancy. The parties agreed only on the amount of rent to be paid each month — $650. From the trial testimony, it was readily apparent that neither the Carlos nor the Matthews had contemplated when or under what conditions the lease would be terminated. This lack of definitive extended the lease and the parties’ corresponding property interest for an indefinite period. Thus, the situation falls squarely within the definition of a month-to-month tenancy. Therefore, the Matthews had a duty to provide the Carlos a month’s notice before quitting the lease.
The Carlos diligently obtained a new tenant at a rent of $650 per month on June 1, 2016. Consequently, under well-established common-law principles, the Matthews owe the Carlos one month’s rent (Boyar v Wallenberg, 132 Misc 116, 119 [Buffalo City Ct 1928]).
Ordered that the defendants Betty Koch-Matthews and Diana Matthews pay the plaintiffs Tim and Kim Carlo $650, and it is further ordered that the defendants Betty Koch-Matthews and Diana Matthews pay the plaintiffs Tim and Kim Carlo the filing fee in this matter of $20.

. See Scalia & Garner, Reading Law: The Interpretation of Legal Texts § 11 at 112 (1st ed 2012) (citing an example of a statute concerning notice to quit a lease that nearly mirrors Real Property Law § 232-b to contrast how *469 the words “may” and “shall” create either a mandatory or a permissive statute).

. If Real Property Law § 232-b was mandatory, the court would be obligated to determine if the legislature intended Real Property Law § 232-b *470 to allow parties to commence a private cause of action to enforce the statutory mandate (compare Reed v Ragsdale, 181 Misc 2d 773, 775 [Newark Just Ct 1999] [noting that while Real Property Law § 235-e is mandatory in nature, the law provides no sanctions for its violation], with Real Property Law § 235-f [9] [containing an explicit provision for the maintenance of a privative action]).